Patrick K. Hanly (SBN 128521)
455 Capitol Mall #325
Sacramento, California 95814
Telephone: (916) 773-2211
Facsimile: (916) 492-2680

Attorney for Defendant
STEPHEN J. DOUGAN

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN J. DOUGAN,<br><br>Defendant. | Case No: 16-0145 WBS<br><br>**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE FOR PROSECUTORIAL MISCONDUCT**<br><br>**Date: March 4, 2019**<br>**Time: 9:00 a.m.**<br>**Courtroom: Honorable WILLIAM B. SHUBB** |

## I. INTRODUCTION

Defendant files this Amended Motion to Dismiss for Prosecutorial Misconduct to add two new arguments and one request. First, at page 9, lines 8-11, an argument is added that the government prejudiced Mr. Dougan by arguing the perjured testimony to the jury in its closing argument despite knowing at that time that the testimony was false. Second, at page 12, lines 10-28 and page 13, lines 1-18, an argument is added that after trial the defense learned that the government failed to provide additional *Brady* material it received in late December 2018 surrounding the drafting of the 2006-2007 protest letter. Finally, on page 14, based on the recent revelation of this potential new *Brady* violation, a Request is made for the forthwith discovery of the interview reports and handwritten notes comprising

the *Brady* material.[1]

The Defendant moves to dismiss the Indictment with prejudice based on the government's subornation of perjury and outrageous government conduct that prejudiced the defendant. In the alternative, the defendant asks the Court to dismiss this case for prosecutorial misconduct under its supervisory power.

## II. FACTS.

On June 6, 2011, Veronica Layman sued Mr. Dougan for, among other things, Breach of Employment Contract and Failure to Pay Wages. Exhibit A. Her lawyer was Frank Radoslovich. In her complaint, Ms. Layman alleges detailed facts about all the work she did for Mr. Dougan in his law practice at SJD and Associates. She claimed in her complaint that she:

"functioned as a cross between an executive assistant and a legal assistant. She performed many tasks for DOUGAN over the course of approximately five years, including but not limited to the following: providing administrative and secretarial support ; acting as a liaison between DOUGAN and clients, insurance adjusters, and other attorneys; composing and filing correspondence, reports, and other documents for DOUGAN'S cases; scheduling appointment, depositions, and mediations; conducting research for DOUGAN'S trials, interviewing clients; and acting as a courier."

Exhibit A, paragraph 10.

Layman goes on in her complaint to claim that when the IRS contacted Dougan about his taxes he asked her to change her voicemail from "this is Veronica Layman with SJD and Associates" to "this is the personal voicemail of Veronica Layman." Layman further claims in her 2011 lawsuit that Dougan instructed her to tell the IRS if asked that she did not realize she made enough money to have to file her taxes.

In her complaint, Layman also quoted from a letter of recommendation written for her by Dougan after their relationship ended. In the complaint, Layman quotes Dougan as saying she "had been under his employ for the last five" years and that he knew Layman "would serve another employer

---

[1] At the time of the filing of the original Motion, the defense did not have the Closing argument transcript and did not know of the *Brady* violation involving the interviews of Robin Klomparens and Douglas Youmans.

well". Layman also quotes Dougan in the complaint as saying she was "an invaluable member of his team."

IRS CI Special Agent Daniel Norman submitted an SAR to the USAO in which he claimed that Veronica Layman did not work for Mr. Dougan. Before the submission of this SAR, Mr. Norman engaged in an email exchange with IRS CI Agent Brenda Fitzgerald on January 26, 2016 who was reviewing Norman's SAR for submission to DOJ Tax for criminal prosecution. Ms. Fitzgerald stated in this email "The girlfriend bit will be fantastic, if true." Exhibit B.

In June of 2015 IRS Agents identified Veronica Layman as someone who worked for Mr. Dougan. In an email chain on June 9 and 10, 2015, Crystal Langston described Layman as "office help" and IRS CI Agent Daniel Norman referred to her as Dougan's "assistant." Exhibit C. On January 7, 2016 IRS Agents interviewed Ms. Layman and she denied ever working for Dougan. The Memorandum of Interview, authored by IRS CI Agent Norman, states "LAYMAN did no work for DOUGAN. Their relationship was only personal, not professional." Exhibit D.

On August 19, 2016, the U.S. Attorney's office produced the first round of discovery in this case along with a discovery letter authored by Assistant U.S. Attorney's Matthew Yelovich and Michael Beckwith. Pages 002455-57 of this discovery consisted of the signature cards for a joint bank account for Mr. Dougan and Ms. Layman. Exhibit E. The documents were signed by both Mr. Dougan and Ms. Layman. On page 002457 of these documents Ms. Layman is identified as an employee of Mr. Dougan.

On December 16, 2018, Ms. Layman was interviewed for a second time by Prosecutors Beckwith and Kim and IRS CI Agent Daniel Norman. This time Layman alerted the prosecution team to the existence of the lawsuit. Layman told the prosecution team she was with Dougan from 2005 to 2010. She went on to say that when the relationship ended, she hired an attorney to get her money back that she had given to Mr. Dougan from the sale of her condominium. The cryptic notes from that interview state on page three of six: "around 2010 – lawsuit". Exhibit F.

On January 9, 2019, the day before trial began, AUSA Beckwith produced to the defense team a March 2, 2010 letter written by Dougan to Layman's attorney, Frank Radoslovich, in response to and referencing Radoslovich's March 1, 2010 letter to Dougan. In this letter Dougan denies that he is

Layman's employer and that she is his employee. Exhibit G. The clear, undeniable import of Dougan's letter is that Radoslovich claimed in his March 1, 2010 letter that Layman was Dougan's employee and he was her employer, thus establishing that Layman was claiming to have worked for Dougan as his employee.[2]

On January 10, 2019 in his opening statement, AUSA Beckwith claimed to the jury that Veronica Layman would testify that she was Mr. Dougan's fiancé and did not work for him and yet Dougan claimed her as a clerical expense on his taxes and produced checks made payable to Layman as backup for this expensed deduction during the IRS audit. Exhibit H.

On January 17, 2019, the government produced to the defense more interviews of Layman. Exhibit I. The interview notes reflect that Layman was interviewed again by the prosecution team on January 7 and January 8, 2019 before her testimony. In these interviews, Layman again informed the prosecution team she hired an attorney but this time she added she wanted to get her money back for her "time and effort" and she "wanted reimbursement for what she did" if he was not going to pay her back her money from the sale of her condominium.

On January 17, 2019, the government also produced a typed, two paragraph statement from Layman in which she reiterated verbatim the claims made in paragraphs 20 and 21 of her lawsuit that Dougan asked her to change her voicemail from "this is Veronica Layman with SJD and Associates" to "this is the personal voicemail of Veronica Layman" and that Dougan instructed her to tell the IRS if asked that she did not realize she made enough money to have to file her taxes. Exhibit J.

On January 17, 2019 Layman took the witness stand. She denied ever working for Dougan in 2006 and claimed that she was just his fiancé and that any monies paid her by Dougan were for running the household and not for her work for him in his law practice. Exhibit K. AUSA Kim made a point of asking Layman during direct examination if she knew that Dougan had claimed the money paid to her in 2006 as a clerical expense on his tax returns. *Id*., p.18, lines. 15-17. Layman replied that she was not aware that Dougan had claimed monies paid to her as a clerical expense on his 2006 tax return. *Id*.

---

[2] In his March 1, 2010 letter Radoslovich does claim that Dougan was Layman's employer and she Dougan's employee.

On cross examination Layman was confronted with her 2011 lawsuit. Despite the clear evidence that she claimed to have worked for Dougan in her lawsuit she continued to deny having worked for him in the 2006 time period. She did admit to having filed the lawsuit and she admitted that she told the prosecution team about the lawsuit in her interviews. *Id.*, p. 38, lines 4-6.

## III. ARGUMENT

### A. This Case Should Be Dismissed Because the Prosecutors Knowingly Presented False Testimony

The right to due process is violated when a prosecutor's misconduct renders a trial "fundamentally unfair." See *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986. When a prosecutor obtains a conviction using testimony which he or she knows or should know is perjured it has been held consistently that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *holding modified by United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Supreme Court has long counseled that "a deliberate deception of court and jury by the presentation of testimony known to be perjured ... is [] inconsistent with the rudimentary demands of justice[.]" *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). If the prosecutor knows that a witness has lied, the prosecutor has a constitutional duty to correct the false impression of the facts. *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir.2000). In sum, in order to prevail on a claim based on *Agur*s and *Napue*, a defendant must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue*, 360 U.S. at 269-71. "False evidence is material 'if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury.'" *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir.2010).

**1. Layman's Testimony Was False.**

It is clear that Ms. Layman's testimony was false. She claimed that she did not work for Mr. Dougan in any capacity in 2006 and yet in 2011 she filed a civil lawsuit in Placer County Superior Court in which she claimed that she worked for Dougan as his employee from 2006 to 2011 and he breached her employment contract by not paying her. In this lawsuit, Layman also made a claim for Failure to Pay Wages. In her complaint, Layman made several factual assertions about the work she performed for Dougan. See Exhibit A, paragraph 10.

In addition to her civil lawsuit, the defense confronted Ms. Layman with a July 1, 2010 e-mail she sent to Mr. Dougan to which she attached her resume. In her email she thanked Dougan for offering to write her a letter of recommendation. In her attached resume, Layman listed her employer from June 2006-June 2010 as SJD & Associates and her role as the EA (executive assistant) to the CEO. Layman also listed the same work in her resume as she later claimed in her 2011 lawsuit against Dougan for Breach of Employment Contract.

The defense also introduced a recommendation letter Dougan wrote for Layman. This is the same letter Layman quoted in her 2011 civil Complaint she filed against Dougan. In that letter, Dougan praised Layman for her work and for being an invaluable member of his team. Layman admitted in testimony that she used the letter in a job interview to obtain employment, though she claimed she alerted the employer that the letter contained "puffery" concerning her work for Dougan.[3]

**2. The Prosecution Knew or Should Have Known That Layman's Testimony Was Actually False.**

It is equally clear that the prosecution team knew, or should have known, that Layman's testimony was actually false. In 2015 emails between IRS Agents the IRS Agents state that Layman was "office help" and Dougan's "Assistant." Exhibit C. In 2016 the government produced First Northern Bank signature cards bearing Layman's signature in which she claimed Dougan as her "employer."

---

[3] In an April 28, 2011 letter to Dougan, Layman's lawyer, Radoslovich, used this recommendation letter as evidence of an admission by Dougan that Layman was in fact his employee

Exhibit E. In a December 16, 2018 interview with Prosecutors Beckwith and Kim and IRS CI Agent Norman, Layman states she hired an attorney to get her money back that she gave to Dougan from the sale of her condominium. Exhibit F. These notes also contain the cryptic reference: "2010 - lawsuit". *Id*. page 3 of 6.[4]

Layman was interviewed again on January 7 and 8 of 2019. Exhibit I. The January 7 interview notes contain a reference to Layman's hiring an attorney and again quote Layman saying she hired an attorney to get her money back from the sale of her condominium but also added that if Dougan was not going to pay her back the money from the sale of her condominium she "**wanted reimbursement for what she did**." Emphasis added. This interview was conducted by AUSA Kim and Agent Norman via telephone. The January 8, 2019 notes of the Layman interview again state she "hired an attorney for house proceeds, wanted to be **compensated for time and effort**." AUSA Kim and Agent Norman conducted this interview as well. Emphasis added. These documents prove the prosecutors and the IRS Agent knew or should have known that Layman sued Dougan for not paying her for the work she performed for him. At a bare minimum, they had an obligation to disclose the civil complaint Layman filed against Dougan.

The two typed paragraphs that the government obtained from Layman and produced to the defense the day before her testimony, prove the government knew Layman's testimony was actually false. Exhibit J. First, both paragraphs are lifted right out of Layman's civil complaint at paragraphs 20 and 21 showing the government knew or should have known about the civil complaint. See Exhibits A and J. Second, in the first paragraph, taken directly from paragraph 20 of Layman's 2011 civil complaint, Layman states that Dougan had Layman change the voicemail message on her cell phone from "This is Veronica Layman to [*sic]* SJD & Associates" to "This is Veronica Layman's personal voicemail." If Layman were only Dougan's Fiancé and taking care of the household chores and seeing to the children as she claimed why did her cellular telephone voicemail greeting say that she was

[4] Clearly this subject was discussed in more detail, but the government only produced the rough notes and not a complete Memorandum of Interview, leaving the reader to wonder what else was said about the "2010 – lawsuit."

"Veronica Layman of SJD & Associates?" If, as Layman claimed to AUSA Kim and IRS CI Agent Norman on January 8, 2019, that her work for Dougan consisted of "one off buz things, mere minutes here and there" did her cell phone have a business voicemail greeting for SJD & Associates.[5] Even the government could figure out from these facts that Ms. Layman was lying about not working for Mr. Dougan in 2006.

In addition, the government knew or should have known Layman did not pay taxes on the $30,000 a year she received for five years from Mr. Dougan. In the notes produced by the government on January 17, 2019 in Exhibit J, Layman says Dougan instructed her to tell the IRS if asked that she did not realize she made enough money to have to file her taxes "(as if it were income)." Why would Dougan or Layman be concerned about paying taxes unless the money was earned working for Dougan. It is clear Layman was also intent on concealing her tax evasion from the government and the government was willing to overlook the same if she would testify against Dougan.

Government's Exhibit 802 also proves the government knew Layman's testimony was actually false. Exhibit 802, offered and read to the jury, is the March 2, 2010 letter from Dougan to Layman's attorney, Frank Radoslovich. In Exhibit 802, Dougan tells Layman's lawyer that Layman was not his employee and he was not her employer. It is inconceivable that two Assistant U.S. Attorneys could read Dougan's letter in Exhibit 802 and conclude anything other than the fact that Layman was claiming through her lawyer that she worked for Dougan in the 2006-2011 time period. To believe otherwise strains credulity.

**3. Layman's False Testimony Was Material.**

Ms. Layman was Mr. Dougan's Fiancé and Dougan paid her as an independent contractor to work for his law office for five years. Only after their relationship ended did Layman try to claim she

---

[5] The Court refused to allow the defense to admit Defense Exhibit CCC, a settlement demand letter from Layman's attorney to Dougan. In that letter, Ms. Layman's attorney seeks $175.000 to settle Layman's claims against Dougan. Apparently, Ms. Layman's work duties consisted of somewhat more than "one off buz things, mere minutes here and there." In a previous letter in November of 2010 Layman's attorney sought over $324,000 to settle the case before the filing of a complaint.

worked as an "employee" vs. an "independent contractor" to extort damages from Dougan for failing to provide her the legal benefits and compensation due an "employee". Hence the letters from Radoslovich claiming Layman was Dougan's employee and Dougan's response that she was not.

Layman's false testimony was material and damaging to Dougan's defense because Mr. Dougan claimed Ms. Layman as a clerical expense on his 2006 tax return. He submitted checks to the IRS in the audit to support this clerical expense deduction. The government argued in its opening statement that Ms. Layman was simply Dougan's girlfriend and did not work for him. Essentially, the government claimed that Ms. Layman was Dougan's girlfriend and he wrote off her off as a business expense. In short, Layman's testimony directly, though falsely, contradicted Dougan's deduction of payments to her as a clerical expense and proved falsely that he obstructed and impeded the IRS audit when he provided checks made payable to Layman for household expenses and claimed it was for her clerical work. The evidence, though false, was devastatingly material.

Mr. Dougan has been irreparably prejudiced by the government's conduct. The jury has heard evidence through the prosecutor's opening statement and the testimony of Ms. Layman that he lied on his tax returns about his clerical expenses. Mr. Beckwith placed the credibility of the federal government behind this false contention in his opening statement when he told the jury that the evidence would show that Mr. Dougan lied on his tax returns about his clerical expenses. That bell cannot be un-rung despite the efforts of the defense to impeach Ms. Layman's credibility. The defense cannot impeach the credibility of the federal government.

The government further compounded its error and further prejudiced Mr. Dougan when it argued Ms. Layman's false testimony to the jury in its closing argument, all the while knowing it was false and the subject of Defendant's then filed Motion to Dismiss for Prosecutorial Misconduct. See Exhibit L to Amended Motion to Dismiss for Prosecutorial Misconduct, p. 10; lines 20-25 to p. 11; lines 1-6.

**B. This Case Should Be Dismissed for Outrageous Government Conduct or Under the Court's Supervisory Powers.**

A district court may properly dismiss an indictment if there is evidence of prosecutorial misconduct that is (1) flagrant and (2) caused substantial prejudice to the defendant. *United States v. Jacobs*, 855

F.2d 652, 655 (9th Cir. 1988). A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. See e.g., *United States v. Simpson*, 813 F.2d 1462, 1464–65 (9th Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987) (Simpson I). If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. These powers may be exercised for three reasons: to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct. See, e.g., *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir.1991) (Simpson II), abrogated in part by *United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008); See also *United States v. Struckman*, 611 F.3d 560, 574-75 (9th Cir. 2010).

To violate due process, governmental conduct must be "'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (citations omitted). Due process is violated where the conduct is attributable to and directed by the government." *Simpson I*, 813 F.2d at 1468.

The Supreme Court has long emphasized "the special role played by the American prosecutor in the search for truth in criminal trials." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc) (quoting *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)). "The prosecuting attorney represents a sovereign whose obligation is to govern impartially and whose interest in a particular case is not necessarily to win, but to do justice.... It is the sworn duty of the prosecutor to assure that the defendant has a fair and impartial trial." *Id*., quoting *Commonwealth of The Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir.1992) (citations omitted), *overruled on other grounds by George v. Camacho*, 119 F.3d 1393 (9th Cir.1997) (en banc).

Here, as discussed above, the prosecutors and the IRS Agents knew that Layman was presenting false testimony. Their decision to present Layman's false testimony at trial in their zeal to convict Mr. Dougan is flagrant and resulted in substantial prejudice to Mr. Dougan as it ironically portrayed him as a liar to the IRS. This conduct also violated Mr. Dougan' Constitutional rights to Due Process because it goes to the very heart of the integrity of our criminal justice system. For a prosecutor to knowingly present perjured testimony to a jury is so grossly shocking and so outrageous as to violate the universal

sense of justice. Moreover, the evidence is clear that this conduct was attributable to and directed by the government. To deter future such governmental misconduct this case must be dismissed.

The government in this case has engaged in a pattern of misconduct that indicates that the prosecutors knowing use of perjured testimony at trial is not an isolated incident. The government violated its obligations under *Giglio v. United States* to produce the impeachment material related to Ms. Layman. The prosecutors also violated their obligation under *Brady v. Maryland* to produce the exculpatory evidence of Ms. Layman's work for Mr. Dougan as well as her claims of having worked for him.

The prosecution also has repeatedly argued in its papers and to the jury that Mr. Dougan wanted to redact his checks so that the IRS could not determine his true income. In fact, as the government well knows, Dougan sent an email to his tax attorney Robin Klomparens on April 21, 2009 instructing her to provide the IRS with the account information they sought[6]:

· From: STEPHEN DOUGAN [mailto:sjd@attydougan.com]
· Sent: Tuesday, April 21, 2009 1:12 PM
· To: Robin Klomparens
· Subject: 2006 AUDIT
·
· Robin: I have made the decision to provide the IRS the Account
· info. predicated on the case I forwarded you. If your clerk has not
· done the research, don't worry about it.
·
·
· SJD
· STEPHEN J. DOUGAN, ESQ.
· SJD & ASSOCIATES
· The Olympus Corporate Center
· 3017 Douglas Blvd., Suite 300
· Roseville, CA 95661

The government knew Dougan was advised by his lawyers not to turn over the unredacted checks out of a concern that this would violate State Bar confidentiality rules. Notes in IRS Agent's Langston's Activity Record produced by the government in discovery reflect this very fact. In addition, the

---

[6] The Court prevented the defense from introducing this e-mail to counter the Government's false assertion.

government knew that Dougan and his attorneys were trying to resolve the IRS check request situation with the IRS by suggesting the use of a Special Master to review the checks. Thus, the government knew Dougan was not trying to hide his income from the IRS by redacting his checks and yet they argued that very point to the jury and pushed this false narrative.

The government also presented to the Jury in its opening statement the proposed testimony of Mr. Dougan's former client Loretta Genera even though the defense provided evidence to the government in advance of trial that Genera had lied to them. Genera told the prosecutors and the IRS Agents before trial that she never knew her case settled for more than the $50,000 she received. See Loretta Genera Memorandum of Interview, page 2; paragraph 12; See Notes of Loretta Genera Interview, Bates Number 063,611. On December 31, 2018, the defense gave the government a copy of Genera's signed Settlement Agreement indicating a settlement amount of $150,000. See Defense Exhibit II. Despite this evidence of Genera's false statements to them, the government still argued her upcoming testimony to the jury in its opening statement.

The government also falsely pushed the narrative that Dougan never offered to pay the taxes he owed during the IRS Revenue audit despite that fact that both Dougan's tax attorneys were present at the August 22, 2012 meeting in which Dougan made this very offer and are prepared to testify that he did make this offer. The Two IRS Agents who attended the August 22, 2012 meeting with Dougan did not note in their reports that Dougan had offered to pay whatever taxes were due and owing. The government continues to push this false narrative in the face of competent evidence to the contrary.

Finally, the defense learned for the first time **after trial** that the government committed another apparent *Brady* violation by not providing the pre-trial interview reports of defendant's tax lawyers, Robin Klomparens and Douglas Youmans. According to the attached Declarations of Klomparens and Youmans, they were interview by AUSAs Beckwith and Kim on December 29, 2018 and told them that they were fully aware of the Defendant's 40% fee agreements, that defendant never lied to them about

his 40% fee agreements and that the decision to use the 25-33% fee range in the 2006-2007 Protest Letter was a joint decision by Youmans, Klomparens, Darla Colson and defendant. Further, Youmans and Klomparens state that at no time did the defendant mislead them about his fee structure to get them to misrepresent his fees in the Protest Letter. See Exhibits M and N. This information was never provided to the defense in any form.

Despite repeated requests after trial for the production of these reports the government has refused. Instead, after receiving an e-mail from defense counsel on January 29, 2019, raising the *Brady* Issue regarding the Youmans and Klomparens interview reports, AUSA Beckwith and two IRS Agents went to the office of Ms. Klomparens at 5:30 pm and interviewed her for over an hour concerning the Protest Letter. Ms. Klomparens states in her Declaration that:

> "During the interview, Mr. Beckwith posed several hypotheticals to me surrounding the drafting of the 06/07 Protest Letter that were not asked during the December 2018 telephone interview. It appeared to me that there was some issue regarding the 06/07 Protest Letter and that he wanted me to change my December 2018 statements concerning the 06/07 Protest Letter." Exhibit M, paragraph 10.

Ms. Klomparens' Declaration strongly suggests the government attempted to cover up the *Brady* violation after trial.

It appears the government knew before trial that Ms. Klomparens and Mr. Youmans possessed exculpatory information concerning the Protest Letter and did not produce this evidence to the defense. What's more, the government argued contrary evidence in their closing they knew or should have known was false. In her closing argument, AUSA Kim argued to the jury that Mr. Dougan lied to his tax attorneys when they put in the protest letter that he charged fees generally ranging from 25-33%. See Exhibit "O" to Amended Motion to Dismiss for Prosecutorial Misconduct, p. 13; lines 22-25 to p.14; lines 1-9. As stated in the Youmans and Klomparens Declarations, they were aware of Dougan's 40% fee agreements and they told the government as much. Moreover, it was Youmans and Klomparens along with Dougan and Colson that decided to use the 25-33% fee range in the Protest

Letter despite the knowledge of Dougan's 40% fee agreements. The government withheld the Youmans and Klomparens interview reports which were *Brady* material and then argued in closing a fact that they knew from these very interviews was false.

**C. REQUEST FOR DISCOVERY OF THE YOUMANS AND KLOMPARENS INTERVIEW REPORTS AND/OR NOTES OF INTERVIEW.**

Despite repeated requests, the government has refused to turn over the Youmans and Klomparens interview reports and rough notes of those interviews. As part of this Motion, the defendant asks the Court to Order the government to produce these interview reports and rough notes of these interviews forthwith.

## IV. CONCLUSION

"The girlfriend bit will be fantastic. If true." Well, it was not true, and both the IRS Agents and the Assistant U.S. Attorneys knew it was not true. In their zeal to convict Mr. Dougan, the Prosecutors knowingly presented perjured testimony at trial. This testimony was material, violated Mr. Dougan's Constitutional right to Due Process and substantially prejudiced Mr. Dougan. The Prosecutors conduct was flagrant, and this conduct appears to have continued after trial. To protect judicial integrity and to deter future such illegal conduct this case must be dismissed with prejudice.

Respectfully submitted,

Dated: February 6, 2019

s/ Patrick K. Hanly
Patrick K. Hanly
Attorney for Defendant
Stephen J. Dougan