UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>STEPHEN J. DOUGAN,<br><br>        Defendant. | No. 2:16-CR-145 WBS<br><br>ORDER RE: AMENDED MOTION TO DISMISS |

----oo0oo----

Before the court is defendant's Amended Motion to Dismiss With Prejudice for Prosecutorial Misconduct. (Docket No. 159.) The court held hearings on the motion on March 4, March 5, and March 18, 2019.

I. Testimony of Veronica Layman

Defendant's first basis for his motion to dismiss the indictment is his claim that the government presented false testimony from Ms. Veronica Layman. To prevail on a false evidence claim under Napue v. Illinois, 360 U.S. 264, 269-71

1

(1959), defendant must show "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." United State v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003). "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." United States v. Croft, 124 F.3d 1109, 1119 (9th Cir. 1997).

Here, defendant argues that Ms. Layman lied when she testified that she did not work for defendant. In support of that contention, defendant primarily relies on Ms. Layman's representations in her lawsuit against defendant in 2011, in which she claimed that she did various tasks for defendant "and functioned as a cross between an executive assistant and a legal assistant." (Am. Mot. 2 (Docket No. 159) & Mot. Ex. A (Docket No. 137-1).) Defendant also cites other evidence which supports his contention that he did in fact employ Ms. Layman, such as his letter of recommendation for Ms. Layman, Ms. Layman's résumé, and an application for a bank card in which Ms. Layman is listed as his employee. Defendant contends that the government knew or should have known that Ms. Layman worked for him, in light of this evidence.

However, this evidence is rebutted by defendant's own letter to Ms. Layman's attorney in which he denies that she ever worked for him, as well as his own sworn declarations submitted in the 2011 lawsuit. In defendant's letter, he characterized Ms. Layman's state court lawsuit as a "failed 'promise to marry'"

2

suit and asserted that "I was never [Ms. Layman's] employer" and "[t]here simply never was an employment relationship or agreement between us." (Gov't Opp'n Ex. 802 (Docket No. 174).) In defendant's state court declarations, he claimed that Ms. Layman "was never an employee of my firm or myself personally," she was never given 1099s or W-2s by defendant or his firm, and she was never "otherwise paid compensation for any employment related duties." (Gov't Opp'n Exs. 803-804 (Docket No. 174).). These assertions alone compel the court to conclude that defendant has not shown that Ms. Layman's testimony was actually false, or that the government knew or should have known it was false.[1] Further, as stated during the hearings on this motion, the court finds Ms. Layman's trial testimony credible.[2] Accordingly, the court will deny the motion to dismiss to the extent it is based on the government's alleged presentation of false evidence regarding Ms.

---

[1] The court rejects defendant's assertions that the government knew or should have known he "used Layman as an independent contractor and not an employee to avoid having to pay . . . employment related taxes and benefits." (See Reply 6 (Docket No. 177).) Notably, neither defendant's letter to Ms. Layman's attorney nor his state court declarations made any mention of an independent contractor relationship. Instead, these documents characterized Layman as a "live-in fiancée" who was allowed "to stay at home and not work for five (5) years" and to whom defendant gave "cash spending money" and money to pay for "home expenses." (See Gov't Opp'n Exs. 802-04.)

[2] During her testimony, Ms. Layman claimed that she did not work as defendant's assistant or paralegal, though she did domestic tasks and errands for defendant as a defendant's live-in fiancé. She further explained that she embellished her résumé in order to obtain work after the conclusion of her relationship with defendant, and she exaggerated her work for defendant in the state court lawsuit in order to recover the proceeds from the sale of her condominium.

3

Layman.

Similarly, the court will deny the motion to dismiss to the extent it is based on defendant's alternative argument that the indictment should be dismissed for prosecutorial misconduct. A court may dismiss an indictment for prosecutorial misconduct only if the conduct was flagrant and caused substantial prejudice to the defendant. United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988). Here, in light of the court's findings that Ms. Layman testified truthfully, defendant has not shown that the government committed any misconduct in connection with Ms. Layman.[3]

## II. Arguments Regarding Defendants' Tax Lawyers

Defendant's second main argument for his motion to dismiss is that the government committed misconduct by arguing in closing that defendant lied to his tax lawyers during his IRS audit, and that the government committed a Brady violation by not

---

[3] The court also rejects defendant's argument that the government committed a Brady or Giglio violation by failing to produce impeachment or exculpatory evidence regarding Ms. Layman. (See Am. Mot. 11 (citing Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).) Defense counsel expressly stated at the hearings on this motion that he was not raising a Brady argument with respect to Ms. Layman, abandoning these arguments. (See, e.g., Tr. Mar. 4, 2019 at 11 (Docket No. 191); Tr. Mar. 5, 2019 at 19 (Docket No. 190).) At any rate, defendant was "aware of the essential facts enabling him to take advantage of any exculpatory evidence," precluding any claim that the government suppressed any evidence regarding Ms. Layman. See Raley v. Ylst, 470 F.3d 792, 804 (9th Cir. 2006); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) ("When . . . a defendant has enough information to be able to ascertain the supposed Brady material on his own, there is no suppression by the government."); see also United States v. Bagley, 473 U.S. 667, 676 (1985) (impeachment evidence "falls within the Brady rule").

4

providing its notes of conversations with the tax lawyers in December 2018 and January 2019. The court rejects both of defendant's claims.

First, the court does not find any misconduct on the part of the government in arguing that defendant lied to his tax lawyers by representing to them that the fees he charged to his clients was generally from 25% to 33%. While both Youmans and Klomparens stated in their declarations that they did not believe defendant lied to them about their fee agreements (Am. Mot. Exs. M at ¶ 8, Mot. Ex. N at ¶ 8(Docket Nos. 159-2 & 159-3)), they later testified at the court's evidentiary hearing that they did not know at the time of the IRS audit that defendant charged 40% in the vast majority of his cases. Youmans also testified that he believed there were some misrepresentations regarding the extent of the 40% fee agreements, and Klomparens testified that it appeared that defendant provided incomplete information to her firm. The court credits these witnesses' in-court testimony over their declarations attached to the motion to dismiss.[4]

---

[4] Mr. Youmans' and Ms. Klomparens' declarations attached to defendant's reply brief (see Docket Nos. 177-2 & 177-3) are of little, if any, value to the court. For example, their statements denying that they were married are certainly misleading, given their testimony at the evidentiary hearing that they have cohabitated for about ten years. While Ms. Klomparens appears to have attempted to give honest testimony (albeit based on somewhat inaccurate recollections), Mr. Youman's statements regarding his relationship with Ms. Klomparens in particular appear to be a deliberate intent to mislead the court. (See Youmans Decl. Supp. Reply (Docket No. 177-2 at ¶ 3) (stating "I am not certain how they [the government attorneys] learned Ms. Klomparens and I are married because we most certainly are not. Neither are we engaged. We are colleagues that work together in a law firm.").) The court is also concerned with defendant's reliance on these misleading statements to support his contention

Further, to the extent there is any discrepancy between the government attorneys' accounts of their conversations with Ms. Klomparens and Mr. Youmans and these witnesses' recollections, the court notes that Mr. Youmans' and Ms. Klomparens' memories of what they knew at the time of the IRS audit has vacillated over time, even in the brief time between their signing of their declarations and their testimony at the evidentiary hearing on this motion. More importantly, in the court's view, the only possible explanations of the inclusion of the 25-33% figure in the IRS protest letter is either (1) Dougan lied to his attorneys regarding what his normal fees were, or (2) the attorneys conspired with Dougan to mislead the IRS. The government attorneys were entitled to give the tax lawyers the benefit of the doubt and assume they were not knowingly participating in a scheme to obstruct an IRS investigation. As such, the government had a good faith basis to argue that Dougan lied to his tax lawyers.

While it is still unclear precisely how the 25-33% fee figure was added to the IRS protest letter, the tax lawyers' post-trial testimony makes it is clear that defendant did not correct that figure despite knowing that it was false. Thus, defendant at a minimum committed a lie of omission, and defendant has not shown that the government committed misconduct during its closing statement.

Second, defendant has not shown any Brady violation in

---

that the government submitted "clear, demonstrable false statements" that, along with other conduct, allegedly violate principles of fairness and due process. (See Reply at 10.)

connection with defendant's tax lawyers Doug Youmans and Robin Klomparens. Even if the government did not initially provide notes of the interviews of those witnesses to defendant, the government did not suppress any evidence as to those witnesses, because defendant was already aware of their potential testimony. See United States v. Dupuy, 760 F.2d 1492, 1502 (9th Cir. 1985) ("[T]he government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish[.]") (citation omitted).

III. Defendant's Other Arguments

Defendant raises other arguments in his motion to dismiss, though these arguments were not fully developed and barely mentioned, if at all, during the hearings on this motion. Specifically, defendant claims that the government committed misconduct by arguing and/or presenting evidence tending to show that: (1) defendant redacted his checks to conceal his income from the IRS; (2) defendant's former client Loretta Genera never knew her case settled for more than the $50,000 she received; (3) defendant never offered to pay the taxes he owed during the audit. The court rejects all these arguments. In all of these instances, there was evidence supporting the government's arguments, and defendant has not shown that the government knew or should have known these arguments were false.[5]

---

[5] Similarly, the court does not find any misconduct by the government in connection with this motion. Defendant has not shown that any of the government attorneys' assertions in their papers or oral argument on this motion were false or misleading

7

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss With Prejudice for Prosecutorial Misconduct (Docket No. 159) be, and the same hereby is, DENIED.

Dated: April 1, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

(aside from their understandable mistaken belief that Ms. Klomparens and Mr. Youmans were married), much less that the government knew or should have known they were false or misleading.